IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CALVERT A. WILLIAMSON,<br><br>        Plaintiff,<br><br>    vs.<br><br>EFLEDA SALOME BASCO; LYNNE JENKINS MCGIVERN; GOVERNOR LINDA LINGLE AND THE STATE OF HAWAII; DIRECTOR DEPARTMENT OF HUMAN SERVICES CHILD PROTECTIVE SERVICE; ROBERT ASATO; HONOLULU POLICE DEPARTMENT AND UNNAMED OFFICERS,<br><br>        Defendants.<br>_____ | ) CIVIL NO.  06-00012 JMS/LEK<br>)<br>) ORDER (1) GRANTING<br>) DEFENDANTS GOVERNOR LINDA<br>) LINGLE, STATE OF HAWAII,<br>) ATTORNEY GENERAL FOR THE<br>) STATE OF HAWAII, DEPARTMENT<br>) OF HUMAN SERVICES CHILD<br>) PROTECTIVE SERVICES, AND<br>) ROBERT ASATO'S MOTION FOR<br>) SUMMARY JUDGMENT;<br>) (2) GRANTING DEFENDANTS<br>) LYNNE JENKINS MCGIVERN AND<br>) EFLEDA SALOME BASCO'S<br>) MOTION FOR SUMMARY<br>) JUDGMENT; AND (3) GRANTING<br>) DEFENDANT HONOLULU POLICE<br>) DEPARTMENT'S MOTION FOR<br>) SUMMARY JUDGMENT |

## ORDER (1) GRANTING DEFENDANTS GOVERNOR LINDA LINGLE, STATE OF HAWAII, ATTORNEY GENERAL FOR THE STATE OF HAWAII, DEPARTMENT OF HUMAN SERVICES CHILD PROTECTIVE SERVICES, AND ROBERT ASATO'S MOTION FOR SUMMARY JUDGMENT; (2) GRANTING DEFENDANTS LYNNE JENKINS MCGIVERN AND EFLEDA SALOME BASCO'S MOTION FOR SUMMARY JUDGMENT; AND (3) GRANTING DEFENDANT HONOLULU POLICE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

Plaintiff Calvert Williamson ("Plaintiff") filed a Second Amended

Complaint ("Complaint") against Efleda Salome Basco ("Basco"); Lynne Jenkins

McGivern ("McGivern"); the State of Hawaii, Governor Linda Lingle, Attorney

General of the State of Hawaii, Department of Human Services Child Protective

Services, and Robert Asato ("State Defendants"); and the Honolulu Police

Department ("HPD") (collectively, "Defendants"), on November 20, 2006.

Plaintiff alleges he suffered constitutional violations and state torts during

proceedings related to his divorce from Basco.

On August 29, 2007, two motions for summary judgment were filed --

the first by Basco and McGivern, and the second by the State Defendants.  On

October 19, 2007, HPD filed a motion for summary judgment.[1]  Based on the

following, the court GRANTS the State Defendants' Motion for Summary

Judgment, GRANTS Basco and McGivern's Motion for Summary Judgment, and

GRANTS HPD's Motion for Summary Judgment.

## II.  **BACKGROUND**[2]

On August 23, 2005, the State of Hawaii Family Court of the First

Circuit entered a Decree Granting Absolute Divorce and Awarding Child Custody

relating to the divorce of Williamson and Basco.  During the divorce proceedings,

Basco was represented by McGivern.  Plaintiff now claims that the various

---

[1] Pursuant to Local Rule 7.2(d), the court finds HPD's motion for summary judgment suitable for disposition without a hearing.

[2] The facts of the case are more fully set forth in the court's previous Orders dated May 10, 2006 (Doc. No. 22); October 6, 2006 (Doc. No. 38); and March 16, 2007 (Doc. No. 77).

Defendants conspired to deprive him of his constitutional and statutory rights during and after the divorce proceedings.  Plaintiff also challenges as unconstitutional Hawaii state laws regarding domestic abuse protective orders, temporary restraining orders, and child custody determinations.

The following claims remain following three rounds of motions to dismiss: Counts 1 and 2 alleging that various state laws violate the Constitution (to the extent they seek prospective relief against the State); Count 3 alleging abuse of process by Basco; Count 5 alleging intentional infliction of emotional distress ("IIED") by Basco, McGivern, and Asato; and Count 7 alleging a violation of 42 U.S.C. § 1983 by HPD.

Basco, McGivern, and the State Defendants filed their motions for summary judgment on August 29, 2007.  Plaintiff did not initially file any opposition to the motions.  A hearing was held on October 15, 2007.  At the hearing, Plaintiff was granted two weeks to submit an opposition, which he filed October 29, 2007.[3]  Defendants replied on November 5, 2007.

---

[3] Plaintiff attaches Exhibits A-I to his Memorandum in Opposition.  The Memorandum in Opposition does not include a Concise Statement of Facts as required by Local Rule 56.1(b) or any affidavit made on personal knowledge, setting forth facts as would be admissible in evidence as required by Federal Rule of Civil Procedure 56(e).  Nonetheless, the court does consider Plaintiff's filings.  The court is mindful that Plaintiff is appearing pro se, and will liberally construe his pleadings.  *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

On October 19, 2007, HPD filed a motion for summary judgment. Plaintiff did not file any opposition to the motion. Based on the following, the court GRANTS the Defendants' motions.

## III. __STANDARD OF REVIEW__

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden initially lies with the moving party to show that there is no genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

At the summary judgment stage, a litigant may not rest on its pleadings and the factual allegations contained therein. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48. Thus, in responding to a defendant's purportedly

undisputed facts, the plaintiff must set forth, by affidavit or otherwise as provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Id.* at 248.

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex*, 477 U.S. at 323-24. "There is no genuine issue of fact if the party opposing the motion 'fails to make an adequate showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (*quoting Celotex*, 477 U.S. at 322). Moreover, there is no genuine issue of material fact if,

taking the record as a whole, a rational trier of fact could not find in favor of the

non-moving party.  *Matsushita*, 475 U.S. at 587; *Taylor*, 880 F.2d at 1045.

## IV.  ANALYSIS

**A.    The State Defendants' Motion for Summary Judgment**

Plaintiff claims that Hawaii laws relating to domestic abuse protective

orders, temporary restraining orders, and child custody determinations are

unconstitutional.  He also alleges an IIED claim against Asato.  The court

addresses each in turn.

### 1.    Constitutional Challenge to State Laws

Plaintiff argues that Hawaii Revised Statutes ("HRS") § 586-4,

Hawaii Family Court Rule ("HFCR") 65, and HRS § 571-46 are unconstitutional.[4]

---

[4] Although Counts 1 and 2 of Plaintiff's Complaint do not explicitly set forth which statutes Plaintiff attacks, his Memorandum in Opposition clarifies that he is challenging HRS §§ 586-4, 571-46, and HFCR 65 as unconstitutional.  The court previously construed Counts 1 and 2 as follows:

> The court construes Count 1 as seeking a declaratory judgment that separated parents are constitutionally entitled to shared custody of their children.  Count 2, liberally construed, seeks a declaratory judgment that the State's decision to base child support payments on the parent's income is unconstitutional.  Plaintiff alleges that these state laws are unconstitutional because parents have a fundamental right to parent their children; he further argues that child support orders violate the Thirteenth Amendment to the United States Constitution because these orders enslave non-custodial parents by forcing them to work.

March 16, 2007 Order at 7 n.4 (Doc. No. 77).

6

A party challenging the constitutionality of a statute bears a heavy burden of proof. *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 17 (1988). The statute comes to the court with a presumption of constitutionality, and the burden is on Plaintiff to establish the statute violates the Constitution. *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976). Plaintiff has failed to carry this burden. As a preliminary matter, the court again finds that, to the extent Plaintiff seeks to collaterally attack the Family Court's Divorce Decree, custody and child support determinations, and procedural rulings, the court is without jurisdiction to review the Family Court's decisions.[5]

//

//

---

[5] As set forth in the court's previous orders, this court may not exercise appellate jurisdiction over state court decisions. Under the *Rooker-Feldman* doctrine (*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), collectively referred to as *Rooker-Feldman*), "'a losing party in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" *Bennett v. Yoshina*, 140 F.3d 1218, 1223 (9th Cir. 1998) (*quoting Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)). The *Rooker-Feldman* doctrine divests federal district courts of jurisdiction to conduct direct reviews of state court judgments even when a federal question is presented. Jurisdiction is lacking even if the state court decision is challenged as unconstitutional. Litigants who believe that a state judicial proceeding has violated their constitutional rights must appeal that decision through their state courts and then seek review in the Supreme Court. The *Rooker-Feldman* doctrine, however, does not apply to a general constitutional challenge that does not require review of a final state court decision in a particular case. *See Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir. 2001).

a.      *HRS § 586-4 and HFCR 65*

Plaintiff argues that HRS § 586-4 and HFCR 65 are facially invalid

because: (1) they violate due process; (2) they are void for vagueness because they

provide no guidance as to what acts justify a Temporary Restraining Order

("TRO"), but leave the determination solely to the judge; and (3) a TRO may be

issued ex parte, that is, it may be issued absent adversarial testing.  As to HFCR

65, Plaintiff also claims there is no threshold of evidence required for verified

complaints.  Plaintiff's claims are without merit.  First, HRS Chapter 586,[6] relating

---

[6] HRS § 586-4 states in part:

> (a) Upon petition to a family court judge, an ex parte temporary restraining order may be granted without notice to restrain either or both parties from contacting, threatening, or physically abusing each other, notwithstanding that a complaint for annulment, divorce, or separation has not been filed. The order may be granted to any person who, at the time the order is granted, is a family or household member as defined in section 586-1 or who filed a petition on behalf of a family or household member.  The order shall enjoin the respondent or person to be restrained from performing any combination of the following acts:
>> (1) Contacting, threatening, or physically abusing the protected party;
>> (2) Contacting, threatening, or physically abusing any person residing at the protected party's residence; or
>> (3) Entering or visiting the protected party's residence.
>> . . . .
> (c) The family court judge may issue the ex parte temporary restraining order orally, if the person being restrained is present in court.  The order shall state that there is probable cause to believe that a past act or acts of abuse have occurred, or that threats of abuse make it probable that acts of abuse may be imminent.  The order further shall state that the temporary restraining order is necessary for the purposes of: preventing acts of abuse

(continued...)

to domestic abuse protective orders, has been found constitutional by Hawaii courts.  This court agrees.  First, HRS § 586-4 does not violate due process.  *See Coyle v. Compton*, 85 Haw. 197, 208-09, 940 P.2d 404, 415-16 (Ct. App. 1997) ("[T]he legislature is not prohibited by the due process clauses from choosing the

---

[6] (...continued)

or preventing a recurrence of actual domestic abuse; and ensuring a period of separation of the parties involved.  The order shall also describe in reasonable detail the act or acts sought to be restrained.  Where necessary, the order may require either or both of the parties involved to leave the premises during the period of the order, and also may restrain the party or parties to whom it is directed from contacting, threatening, or physically abusing the applicant's family or household members.  The order shall not only be binding upon the parties to the action, but also upon their officers, agents, servants, employees, attorneys, or any other persons in active concert or participation with them.  The order shall enjoin the respondent or person to be restrained from performing any combination of the following acts:

(1) Contacting, threatening, or physically abusing the protected party;
(2) Contacting, threatening, or physically abusing any person residing at the protected party's residence; or
(3) Entering or visiting the protected party's residence.

(d) If a divorce or a child custody proceeding is pending, a petition for a temporary restraining order may be filed in that same proceeding to the extent practicable.  Any decree or order issued in a divorce or child custody proceeding subsequent to the petition being filed or an order being issued pursuant to this section, in the discretion of the court hearing the divorce or child custody proceeding, may supersede in whole or part the orders issued pursuant to this section.  The factual findings and rulings made in connection with the granting or denying of a temporary restraining order may not have binding effect in any other family court proceeding, including child custody determinations under section 571-46, and the court in such proceedings may give de novo consideration to the facts and circumstances alleged in making later determinations affecting the parties, including determination of custody and visitation.

lesser burden of a preponderance of the evidence as the appropriate judicial basis for the issuance of a protective order. . . .  Therefore, we conclude that application of the preponderance of the evidence standard rather than the clear and convincing standard did not violate Defendant's right to due process.").[7]

Second, Plaintiff's claim that the statute is void for vagueness because it provides no guidance as to what acts justify a TRO is unfounded.  *See id.* at 207, 940 P.2d at 414 ("The acts prohibited are defined and objectively ascertainable.  The court may only issue orders '*necessary* to prevent domestic abuse or a recurrence of abuse.'  HRS §§ 586-4 and 586-5.5 (emphasis added).  Thus, the statute mandates that each restraining order be tailored to the specific situation involved." (some citations omitted)).

Finally, with respect to Plaintiff's complaint as to the ex parte nature of the TRO, under HRS § 586-4(c), the Family Court is authorized to issue the TRO *only* upon "probable cause to believe that a past act or acts of abuse have occurred, or that threats of abuse make it probable that acts of abuse may be imminent."  Further, Plaintiff was able to move to vacate or modify the TRO.  *See*

---

[7] Nor does HRS Chapter 586 violate Plaintiff's equal protection rights.  *See Coyle v. Compton*, 85 Haw. 197, 206, 940 P.2d 404, 413 (Ct. App. 1997) ("We hold, therefore, that there is a rational basis underlying the standard of proof adopted by the legislature for HRS Chapter 586.").

*Kie v. McMahel*, 91 Haw. 438, 441-42, 984 P.2d 1264, 1267-68 (Ct. App. 1999) (rejecting defendant's argument that due to the ex parte nature of a TRO, "his 'right' to be considered 'innocent until proven guilty' was violated by the proceedings," and noting that under HRS § 586-4(b), "the family court is authorized to issue such a TRO only upon 'probable cause to believe that a recent past act or acts of abuse have occurred, or that threats of abuse make it probable that acts of abuse may be imminent'"); *see id.* at 443-44, 984 P.2d at 1269-70 ("Defendant had the same opportunity as Plaintiff to convince the court that the order for protection should or should not have been granted.  The court heard versions of the events from both parties.").

HFCR 65,[8] relating to restraining orders issued by Family Court, is

_____

[8] The rule states:

> RULE 65. INJUNCTIONS
> (a) [Reserved].
> (b) Restraining Order; Notice; Hearing; Duration.  A restraining order may be granted without notice to the adverse party when it clearly appears from specific facts shown by affidavit or by the verified complaint or cross-complaint that immediate relief to the applicant is appropriate. Every restraining order granted without notice shall be filed forthwith in the clerk's office and entered of record, shall be accompanied by an appropriate application for further relief and notice of hearing, and shall be served forthwith upon any party or parties affected by the order.  It shall continue in effect until further order of the court.  On 2 days notice to the party who obtained the restraining order without notice, or on such shorter notice to that party as the court may prescribe, the adverse party may appear and move for its dissolution or modification and in that event the

(continued...)

also constitutional.  *See generally In re Guardianship of Carlsmith*, 113 Haw. 236, 151 P.3d 717 (2007) (rejecting facial and as-applied constitutional challenges to HFCR 65).

The rule does not violate Plaintiff's due process rights.  *See id*. at 242, 151 P.3d at 723 ("In sum, because due process is flexible and calls for such procedural protections as the particular situation demands . . . [HFCR 65] on its face satisfies the constitutional requirements." (citation and quotation signals omitted)); *see also Burlington N. R. Co. v. Woods*, 480 U.S. 1, 5-6 (1987) (observing that the Federal Rules of Civil Procedure, upon which the Hawaii Rules of Civil Procedure are based, enjoy a strong presumption of constitutional

---

[8] (...continued)
court shall proceed to hear and determine such motion as expeditiously as the ends of justice require.
(c) Security.  In all cases, the court, on granting a restraining order or at any time thereafter, may require security or impose such other equitable terms as it deems proper.  No such security shall be required of the State or a county, or an officer or agency of the State or a county.
The provisions of Rule 65.1 apply to a surety upon a bond or undertaking under this rule.
(d) Form and Scope of Restraining Order.  Every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.
(e) [Reserved].

and statutory validity).  As noted above, Plaintiff availed himself of the rule's provision allowing a party to move to vacate or modify the TRO.  *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 441 (1974) (Like HFCR 65(b), "[Federal Rule of Civil Procedure] 65(b) establishes a procedure whereby the party against whom a temporary restraining order has issued can move to dissolve or modify the injunction, upon short notice to the party who obtained the order.").

The rule also is not void for vagueness; it is not so vague and indefinite as to be no rule or standard at all.  *See Boutilier v. I.N.S.*, 387 U.S. 118, 123 (1967) (stating that to violate due process, a statute must be "so vague and indefinite as really to be no rule or standard at all" ); *see also In re Guardianship of Carlsmith*, 113 Haw. at 245, 151 P.3d at 726 ("[W]hen a statute is not concerned with criminal conduct or first amendment considerations, the court must be fairly lenient in evaluating a claim of vagueness.  In order to constitute a deprivation of due process, the civil statute must be so vague and indefinite as really to be no rule or standard at all.  To paraphrase, uncertainty in a statute is not enough for it to be unconstitutionally vague; rather, it must be substantially incomprehensible." (citations, quotation signals, and brackets omitted)).

Further, with respect to Plaintiff's complaint as to the ex parte nature of the TRO, under HFCR 65(b), a restraining order may be granted without notice to the adverse party only when it "clearly appears from specific facts . . . that immediate relief to the applicant is appropriate." Further, as discussed above, Plaintiff was able to move to vacate the TRO.

Finally, the court rejects Plaintiff's assertion that HFCR contains no threshold of evidence for verified complaints. In fact, the rule specifies the standard to be applied: "A restraining order may be granted without notice to the adverse party when it clearly appears from specific facts shown by affidavit or by the verified complaint or cross-complaint that immediate relief to the applicant is appropriate." Haw. Fam. Ct. R. 65(b). *See In re Guardianship of Carlsmith*, 113 Haw. at 241, 151 P.3d at 722 ("In HFCR Rule 65(b), the court's discretion is guided by statutory directives indicating that the court may issue a TRO only based on 'specific facts' that would make the request for speedy relief proper. . . . HFCR Rule 65(b) thus contains sufficient direction for the court to guide it in issuing TROs."). Accordingly, Plaintiff's constitutional challenges to HRS § 586-4 and HFCR 65 fail.

//

//

### b.     HRS § 571-46

Plaintiff argues that HRS § 571-46,[9] entitled "Criteria and procedure

---

[9] HRS § 571-46 provides in part:

In the actions for divorce, separation, annulment, separate maintenance, or any other proceeding where there is at issue a dispute as to the custody of a minor child, the court, during the pendency of the action, at the final hearing, or any time during the minority of the child, may make an order for the custody of the minor child as may seem necessary or proper.  In awarding the custody, the court shall be guided by the following standards, considerations, and procedures:
(1) Custody should be awarded to either parent or to both parents according to the best interests of the child, and the court may also consider the importance of frequent, continuing, and meaningful contact of each parent with the child unless the court finds that a parent is unable to act in the best interest of the child;
(2) Custody may be awarded to persons other than the father or mother whenever the award serves the best interest of the child.  Any person who has had de facto custody of the child in a stable and wholesome home and is a fit and proper person shall be entitled prima facie to an award of custody;
(3) If a child is of sufficient age and capacity to reason, so as to form an intelligent preference, the child's wishes as to custody shall be considered and be given due weight by the court;
(4) Whenever good cause appears therefor, the court may require an investigation and report concerning the care, welfare, and custody of any minor child of the parties.  When so directed by the court, investigators or professional personnel attached to or assisting the court shall make investigations and reports which shall be made available to all interested parties and counsel before hearing, and the reports may be received in evidence if no objection is made and, if objection is made, may be received in evidence; provided the person or persons responsible for the report are available for cross-examination as to any matter that has been investigated;
(5) The court may hear the testimony of any person or expert, produced by any party or upon the court's own motion, whose skill, insight, knowledge, or experience is such that the person's or expert's testimony is relevant to a just and reasonable determination of what is for the best physical, mental, moral, and spiritual well-being of the child whose custody is at

(continued...)

in awarding custody and visitation," is unconstitutional because it subjects parents

---

[9] (...continued)
issue;

(6) Any custody award shall be subject to modification or change whenever the best interests of the child require or justify the modification or change and, wherever practicable, the same person who made the original order shall hear the motion or petition for modification of the prior award;

(7) Reasonable visitation rights shall be awarded to parents, grandparents, siblings, and any person interested in the welfare of the child in the discretion of the court, unless it is shown that rights of visitation are detrimental to the best interests of the child;

(8) The court may appoint a guardian ad litem to represent the interests of the child and may assess the reasonable fees and expenses of the guardian ad litem as costs of the action, payable in whole or in part by either or both parties as the circumstances may justify;

(9) In every proceeding where there is at issue a dispute as to the custody of a child, a determination by the court that family violence has been committed by a parent raises a rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of family violence.  In addition to other factors that a court must consider in a proceeding in which the custody of a child or visitation by a parent is at issue, and in which the court has made a finding of family violence by a parent:

(A) The court shall consider as the primary factor the safety and well-being of the child and of the parent who is the victim of family violence;

(B) The court shall consider the perpetrator's history of causing physical harm, bodily injury, or assault or causing reasonable fear of physical harm, bodily injury, or assault to another person; and

(C) If a parent is absent or relocates because of an act of family violence by the other parent, the absence or relocation shall not be a factor that weighs against the parent in determining custody or visitation;

(10) A court may award visitation to a parent who committed family violence only if the court finds that adequate provision can be made for the physical safety and psychological well-being of the child and for the safety of the parent who is a victim of family violence[.]

to the subjective values of judges who have wide discretion to determine the best interests of the child; is void for vagueness; and violates due process by creating an undue burden that interferes with parents' rearing of their child.  The court rejects these claims.

"Under HRS § 571-46, the sole issue in a custody determination is the child's best interests, which is an issue of ultimate fact."  *Fisher v. Fisher*, 111 Haw. 41, 47, 137 P.3d 355, 361 (2006); *see also id.* at 50, 137 P.3d at 364 ("Hawai'i courts have consistently adhered to the best interests of the child standard as paramount when considering the issue of custody.  In so doing, the family court is granted broad discretion to weigh the various factors involved, with no single factor being given presumptive paramount weight, in determining whether the standard has been met."); *Crow v. Crow*, 49 Haw. 258, 261, 414 P.2d 82, 85 (1966) ("The determination of the care, custody and control of a minor child in a divorce proceeding is peculiarly within the wide discretionary power of the trial court whose paramount consideration is the welfare of the minor child.").

Plaintiff first argues that this standard is unconstitutional because it subjects parents to the subjective values of judges who have wide discretion to determine the best interests of the child.  The court rejects this assertion; although trial courts have some discretion, judges must adhere to the factors enumerated in

17

HRS § 571-46 in formulating custody determinations and their discretion is not unfettered.  *See Doe v. Doe*, 98 Haw. 144, 150, 44 P.3d 1085, 1091 (2002) ("When a court's decision has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant, the family court abuses its discretion." (citation, quotation signals, and brackets omitted)).

The court also finds meritless Plaintiff's claim that the statute is void for vagueness.  The "best interests of the child" standard appropriately allows courts the flexibility to deal with the specific circumstances of each case, but is not so impermissibly vague as to be no standard at all.  *Montgomery County Dep't of Social Servs. v. Sanders*, 381 A.2d 1154, 1164 (Md. App. 1977) ("Custody cases involve too many people, conditions, and human emotions to be reduced summarily to a mere mathematical process.").

To the extent Plaintiff argues the statute is unconstitutional because it does not employ a "clear and convincing evidence" standard, that claim is likewise without merit.  Although the clear and convincing standard is used in abuse and neglect proceedings, it is not constitutionally required for custody determinations during divorce.  *See Brittain v. Hansen*, 451 F.3d 982, 989-90 (9th Cir. 2006) ("When the state seeks to terminate parental rights due to child abuse, the state is

18

required to prove abuse or neglect by clear and convincing evidence.  [*Santosky v.
Kramer*, 455 U.S. 745, 769-70 (1982)].  Such hearings necessarily are adversarial
in nature, with the government bringing accusations of fault against parents. . . .
By contrast, the states regularly adjudicate custody disputes between the parents
on a 'best interests of the child' standard.  Such proceedings involve no
government accusations of fault or the government acting in an adversarial role
against the parents.  Indeed, the Supreme Court has stated that 'persons faced with
forced dissolution of their parental rights have a more critical need for procedural
protections *than do those resisting state intervention into ongoing family affairs*.'
*Santosky*, 455 U.S. at 753." (some citations and quotation signals omitted)).

Finally, the court rejects Plaintiff's argument that HRS § 571-46
violates due process by creating an undue burden that interferes with parents'
rearing of their child.  Although the Due Process Clause of the Fourteenth
Amendment protects the fundamental right of parents to make decisions
concerning the care, custody, and control of their children, *Troxel v. Granville*,
530 U.S. 57, 66 (2000), parental rights are not absolute and are subject to
reasonable regulation.  *Runyon v. McCrary*, 427 U.S. 160, 178 (1976).[10]

---

[10] *See also Stanley v. Illinois*, 405 U.S. 645, 652 (1972) (describing as "legitimate
interests, well within the power of the State to implement," the "moral, emotional, mental, and

(continued...)

19

Safeguarding the best interests of children is without dispute a substantial state interest. *See Palmore v. Sidoti*, 466 U.S. 429, 433 (1984) (holding that the state has a "duty of the highest order to protect the interests of minor children" and that "[t]he goal of granting custody based on the best interests of the child is indisputably a substantial governmental interest").  HRS § 571-46, containing the "best interests of the child" standard, constitutes a reasonable regulation of parental rights upon the dissolution of marriage.  *See Reno v. Flores*, 507 U.S. 292, 303-04 (1993) ("'The best interests of the child,' a venerable phrase familiar from divorce proceedings, is a proper and feasible criterion for making the decision as to which of two parents will be accorded custody.").[11]  In short, HRS § 571-46 does not unconstitutionally infringe on any fundamental parental right.[12]

---

(...continued)

physical welfare of the minor and the best interests of the community," and to "strengthen the minor's family ties whenever possible, removing him from the custody of his parents only when his welfare or safety or the protection of the public cannot be adequately safeguarded without removal" (citation and quotation signals omitted)).

[11] "The principle of the best interests of the child is the sine qua non of the family law process governing custody disputes."  *Banning v. Newdow*, 14 Cal. Rptr. 3d 447, 452 (Cal. App. 2004); *see also* Unif. Marriage and Divorce Act § 402 (1973) ("The court shall determine custody in accordance with the best interest of the child.").  Further, the "best interests of the child" standard is the benchmark for custody determinations in the vast majority of jurisdictions.  As the Supreme Court observed in 2000, "a search of current state custody and visitation laws reveals fully 698 separate references to the 'best interest of the child' standard . . . ."  *Troxel v. Granville*, 530 U.S. 57, 84 n.5 (2000) (Stevens, J., dissenting).

[12] Nor does it violate Plaintiff's rights under the Equal Protection Clause.  *See Fujikane v.*
(continued...)

Under the vast weight of authority, the court rejects Plaintiff's attack on HRS

§ 571-46.

### 2.      *Claims Against Asato*

Plaintiff's remaining cause of action against Asato is his Count 5

state-law IIED claim.  Because all of Plaintiff's claims against Asato arise out of

the performance of Asato's duties as a Child Protective Services employee, Asato

is entitled to immunity pursuant to HRS § 350-3.  The statute provides that "[a]ny

individual who assumes a duty or responsibility pursuant to section 350-2 [entitled

"Action on reporting"] or chapter 587 ["Child Protective Act"] shall have

immunity from civil liability for acts or omissions performed within the scope of

the individual's duty or responsibility."  HRS § 350-3(b).  *See also Beltran v.*

*Santa Clara County*, 491 F.3d 1097, 1100-01 (9th Cir. 2007) ("In this circuit, we

have determined that under this framework social workers are entitled to absolute

_____

(...continued)
*Fujikane,* 61 Haw. 352, 354, 604 P.2d 43, 45 (1979) ("In both the original custody determination and any subsequent motion for a change, each parent has an equal right to custody.  Neither parent has a preferred status.").

To the extent Plaintiff's Complaint alleges that the imposition of child support subjects him to slavery or is otherwise unconstitutional, this claim is likewise without merit.  *See Child Support Enforcement Agency v. Doe*, 109 Haw. 240, 251-53, 125 P.3d 461, 472-74 (2005) (holding that the obligation to comply with a child support order did not violate the father's Thirteenth Amendment rights); *see also P.O.P.S. v. Gardner*, 998 F.2d 764, 767-70 (9th Cir. 1993) (holding that child support guidelines' statutory schedule did not violate procedural due process, substantive due process, or equal protection rights of divorcing parents).

21

immunity for their actions in investigating and presenting evidence to the

dependency court. . . . [The Ninth Circuit] extends absolute immunity to the failure

to investigate possible exculpatory evidence and to the fabrication of evidence in

dependency petitions. . . . [S]ocial workers are entitled to absolute immunity for

filing custody petitions." (citations and quotation signals omitted)).

   In an effort to overcome Asato's statutory immunity, Plaintiff claims

that "[a]lthough Asato alleged that he was only doing his job and holds no malice

toward the plaintiff, he would not so much as give the plaintiff an opportunity to

be heard."  Pl.'s Opp'n 18.  He also asserts that Asato did not follow the

guidelines and procedures of the Child Welfare Services Branch ("CWS"),

Department of Human Services.  Plaintiff's arguments are unavailing.

   In his Memorandum in Opposition, Plaintiff claims:

> Mr. Robert Asato was assigned to investigate Ms. Basco's
> accusation of abuse to the oldest child by Mr. Williamson.
> During Mr. Asato's investigation, he did not talk to Mr.
> Williamson, and he did not talk to any of the children's
> teachers even though he conducted his investigation at the
> children's school.  Mr. Williamson made several attempts to
> speak with Mr. Asato by leaving several messages on Mr.
> Asato's voice message service. . . .  Mr. Asato testified at the
> trial that in his investigation he found Mr. Williamson to be of
> harm to his own children, but he did not have any evidence to
> support his findings. . . .  Without standing, Mr. Asato entered
> Mr. Williamson in the child abuse registry, and Mr. Williamson
> appealed to the Department of Human Services for a fair

> hearing before an independent party. . . .  During the hearing it was discovered that Mr. Asato had ex parte communication with Ms. Basco.  Ms. Basco sent facsimiles to Mr. Asato to aid him in preparing for the hearing with the Department of Human Services.  Mr. Asato presented the material sent to him at the time of the hearing.  Mr. Williamson had no knowledge of the documents prior to the hearing and only learned of their existence when Mr. Asato presented the material at trial as evidence.

Pl.'s Opp'n 6-7.  All of the conduct described above, however, involves acts or omissions performed within the scope of Asato's responsibility as a Child Protective Services social worker.  Asato's declaration states:

> 4.     In conducting my investigation and preparing my report, I was at all times acting in my capacity with the Child Protective Services division . . . in the usual and customary course of our business.
>
> 5.     My one and only purpose in conducting the investigation and preparing the report was to complete an assignment given to me by the department.
>
> 6.     I also testified in court regarding my investigation and report.  In doing so, I was again doing my job and following the polices and procedures of the department.  I had no other purpose.
>
> 7.     At all times material hereto, I had no malice toward the Plaintiff.  My motivation was to do my job.

Asato Decl. ¶¶ 4-7.  Plaintiff neither alleges nor sets forth evidence that Asato was acting outside the scope of his employment when he performed the acts described.

Plaintiff has failed to meet his burden on summary judgment.  The State

Defendants' Motion for Summary Judgment is GRANTED as to the remaining claim against Asato.

In sum, the court GRANTS the State Defendants' motion for summary judgment.

## B.     Basco and McGivern's Motion for Summary Judgment

Plaintiff claims that Basco improperly abused the legal process during their divorce proceedings and that Basco and McGivern are liable for IIED.[13]  The court first addresses Plaintiff's claims against Basco.

### 1.     *Claims Against Basco*

#### a.     *Abuse of Process*

On April 2, 2004, Basco filed an Ex Parte Petition for a Temporary Restraining Order for Protection and Statement, claiming that Plaintiff verbally and physically abused her and their son, and that she was afraid of his threats.  *See* Basco Decl. ¶¶ 4, 10, 13, 14, 16; Basco's Ex. A.  On April 26, 2004, Basco filed a Complaint for Divorce on the basis that the marriage was irretrievably broken. *See* Basco Decl. ¶ 15; Basco's Ex. B.  She then filed a June 24, 2004 Motion and

---

[13] Although this Order dispenses of all federal claims, the court, in its discretion, retains jurisdiction over Plaintiff's state law claims.  *See Long v. City & County of Honolulu*, --- F.3d ---, 2007 WL 4463917, at *4 (9th Cir. Dec. 21, 2007) ("[A] federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in [28 U.S.C.] § 1367(c) . . . ." (citation and quotation signals omitted; brackets in original)).

Affidavit for Pre-Decree Relief seeking temporary sole legal and physical custody

of the children, which was granted by the Family Court.  *See* Basco's Exs. C & D.

Plaintiff alleges that Basco's TRO and Divorce Complaint constituted

fraudulent claims of family abuse.  He claims that Basco improperly "used a legal

process designated to provide safety and security to women and children from [an]

abusive husband or mates and fathers to deprive the Plaintiff of his constitutional

rights," because she was "[u]pset that the Plaintiff would not agree to allow his

children around any of Defendant Basco's family," and that "she proclaimed that it

was bad being married to an African, which resulted in part to her filing a

fraudulent claim of family abuse."  Compl. ¶¶ 111, 112, 123.

Basco argues that she properly used the legal process in order to

protect herself and her children from Plaintiff.  According to Basco, because

Plaintiff physically and verbally abused her and their son, in February 2004, she

contacted the Domestic Violence Clearinghouse & Legal Hotline, and was referred

to a psychologist and told to seek help through Puuhonua, a domestic violence

drop-in center.  Basco Decl. ¶ 13.  A crisis worker there advised her to file for a

TRO.  *Id.* at ¶ 14.  Basco claims that she filed for divorce in April 2004 "not

because [she] no longer want[ed] to be married to an African-American but

because of Plaintiff's abusive behavior."  *Id*. at ¶ 15.  Basco claims that she used

the legal process for the purpose in which it was intended because she feared

further abuse, and wanted to be divorced from Plaintiff because of the

deterioration of the marriage.  Basco & McGivern's Mem. in Supp. 6.

Under Hawaii law, the elements of abuse of process are "(1) an

ulterior purpose and (2) a wilful act in the use of the process which is not proper in

the regular conduct of the proceeding.  Liability for abuse of process is imposed

when the putative tortfeasor uses legal process 'primarily' for an ulterior motive."

*Chung v. McCabe Hamilton & Renny Co.*, 109 Haw. 520, 529, 128 P.3d 833, 842

(2006) (citations and quotation signals omitted).  "[T]here is no action for abuse of

process when the process is used for the purpose for which it is intended, but there

is an incidental motive of spite or an ulterior purpose of benefit to the defendant."

*Pourny v. Maui Police Dep't*, 127 F. Supp. 2d 1129, 1153 (D. Haw. 2000)

(citation and quotation signals omitted).

> In an abuse of process case, the underlying action may be fully
> justified on its legal merits, but it is instituted for an objective
> other than that which the proceedings are designed to
> accomplish.  As noted by the Hawaii Supreme Court,
>
> > The common law action for abusing legal process
> > is confined to the use of process for the purpose of
> > compelling the defendant to do some collateral
> > thing which he could not lawfully be compelled to
> > do.

*Smith v. Hurd*, 699 F. Supp. 1433, 1436 (D. Haw. 1988) (*quoting Wilcox v.*

*Berrey*, 16 Haw. 37, 43 (1904)).

Plaintiff argues that Basco "filed for a TRO solely for an ulterior

motive," Pl.'s Opp'n 8, and not because of spousal or child abuse.  To support this

claim, Plaintiff submits an Administrative Hearing Decision dated October 22,

2004 from the State of Hawaii Department of Human Services ("Department"),

regarding a July 1, 2004 notice issued by the Child Welfare Services Branch

confirming allegations "of threatened physical harm/abuse . . . to a child."  Pl.'s

Ex. B at 1.  Plaintiff requested a hearing to dispute the July 1, 2004 notice.  *Id.*

The single issue before the hearing officer was whether "the Department correctly

confirm[ed] the allegation against [Plaintiff] of threatened physical abuse/harm to

child."  *Id.*  The hearing officer concluded that "[t]he Department did not correctly

find, based upon the available evidence, that there was a threat of abuse/harm to a

child residing in [Plaintiff's] household," *id.*, because "the described

circumstances do not establish 'a reasonably foreseeable substantial risk of harm'

to Child by [Plaintiff]."  *Id.* at 9 (*quoting* Hawaii Administrative Rules §§ 17-

920.1-2 & 17-920.1-11).

Despite Plaintiff's subjective belief, the conclusions of the hearing

officer do not demonstrate that Basco sought the TRO primarily for an ulterior

purpose.  Although the October 22, 2004 Administrative Hearing Decision

concluded that the *Department* did not correctly find that "there was a threat of

abuse/harm to a *child* residing in [Plaintiff's] household," *id.* at 1 (emphasis

added), as the hearing officer noted, the "Family Court and the Department have

quite different functions, procedures, and rules; and a Family Court's dismissal of

a TRO (for whatever reason) is *not* inherently res judicata concerning any

Departmental determinations as to child protection and welfare." *Id.* at 10.  The

Family Court TRO was a part of proceedings wholly distinct from complaints of

child abuse to CWS.

Further, the report does not address Basco's claims that "Plaintiff was

verbally abusive and threatening towards [her] during [the] marriage."  Basco

Decl. ¶ 4.  In fact, Plaintiff has set forth no evidence to rebut Basco's claim that

her fear of spousal abuse was a factor leading her to seek the TRO.  In short, the

Administrative Hearing Decision does not stand for the proposition advanced by

Plaintiff; namely, that the decision demonstrates that Basco sought the TRO solely

for an ulterior purpose.

Plaintiff also submits the letter of Janine Konia, one of the children's

preschool teachers, in order to show that Basco "coached the children and

28

threatened to leave them if they loved their father."  Pl.'s Opp'n 8.  The letter

states:

> [Child] began to say things like, "Mommy is afraid Daddy will
> hurt my brother," or, "My Mommy and Daddy were fighting
> and it was loud." . . . [Basco] informed me that she had filed for
> a TRO on her husband, and brought me a copy.  Her fear was
> that he would try to take [child] from the center without her
> knowledge. . . .  [Child] does occasionally share with me that
> she is afraid that Mommy will not come back, or that Daddy
> will yell at Mommy.  She also is verbalizing that she misses her
> dad.

Pl.'s Ex. C.  The letter does not indicate that Basco coached or threatened the

children and does not advance Plaintiff's claim that Basco abused a legal process

in seeking the TRO.  If anything, it confirms that Basco feared abuse or the threat

of abuse.

Finally, the court rejects Plaintiff's assertion that "[t]he willfulness of

Ms. Basco to abuse the judicial process is surmised by her concise statement, 'I

hired Ms. McGivern to help me because I did not have any legal experience.'"

Pl.'s Opp'n 8.  The statement attributed to Basco does not show that she abused a

legal process.  The court GRANTS Basco's motion as to Count 3.

     *b.*    *IIED*

Plaintiff alleges that "Defendants deliberately inflicted emotional

distress on the Plaintiff," that their "conduct was extreme and outrageous," and

29

that "[a]s a result of Defendants' extreme and outrageous conduct the Plaintiff has suffered and will continue to suffer mental pain and anguish, severe emotional trauma embarrassment, and humiliation."  Compl. ¶¶ 131, 133, 138.  He claims that he is diabetic, has hypertension, and a thyroid condition, and that "[i]t has been the intentional and outrageous actions taken by Ms. Basco, Ms. McGivern, Mr. Asato, and the state of Hawaii that has caused devastating harm to Mr. Williamson by inflicting severe emotional distress."  Pl.'s Opp'n 13.

According to Plaintiff, "stress causes diabetes," and he "was a healthy person who ate well, was in good shape, and has no family history of diabetes mellitus. . . .  Because Ms. Basco filed a false TRO to get an advantage in the divorce . . . that has caused him to suffer greatly."  Pl.'s Opp'n 14.

The elements of an IIED claim are "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another."  *Hac v. Univ. of Haw.*, 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003).  "The term 'outrageous' has been construed to mean without just cause or excuse and beyond all bounds of decency. Moreover, 'extreme emotional distress' constitutes, *inter alia*, mental suffering, mental anguish, nervous shock, and other highly unpleasant mental reactions." *Enoka v. AIG Haw. Ins. Co.*, 109 Haw. 537, 559, 128 P.3d 850, 872 (2006)

30

(citation and quotation signals omitted).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Tseu ex rel. Hobbs v. Jeyte*, 88 Haw. 85, 93, 962 P.2d 344, 352 (1998) (*quoting* Restatement (Second) of Torts § 46 cmt. d (1965)).

Basco argues that the act of filing the TRO petition and the divorce complaint is not outrageous conduct.  The court agrees.  Under the circumstances, there is no genuine issue that Basco's alleged conduct does not rise to the level of "outrageousness" required to maintain an IIED claim; it is not "without just cause or excuse and beyond all bounds of decency," or, "utterly intolerable in a civilized community."  Although Plaintiff may have suffered emotional distress, on the current record, he fails to demonstrate that Basco is liable.  Basco's motion is GRANTED as to Count 5.

### 2.   *Claims Against McGivern*

Plaintiff's only remaining claim against McGivern is Count 5 (IIED).  According to Plaintiff, "Ms. McGivern is motivated by radical feminism; she stole Mr. Williamson's military documents and deprived Mr. Williamson of a document

in violation of law," and this conduct "has caused him to suffer gravely."  Pl.'s Opp'n 14.

Even assuming that McGivern is "motivated by radical feminism," Plaintiff has set forth no evidence that she has engaged in any outrageous, intentional conduct.[14]  In fact, the record demonstrates that McGivern did not steal any of Plaintiff's military documents.  Instead, according to Basco, "[t]he documents regarding Plaintiff's military discipline were left behind by Plaintiff in our shared house and I gave them to my attorney, Lynne McGivern, for use in the divorce and custody trial."  Basco Decl. ¶ 33.  Because Plaintiff, the non-moving party, fails to make a showing sufficient to establish the existence of an element essential to his IIED claim, summary judgment is appropriate.  *See Broussard*, 192 F.3d at 1258; *see also Taylor*, 880 F.2d at 1045 ("There is no genuine issue of fact if the party opposing the motion 'fails to make an adequate showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (*quoting Celotex*, 477 U.S. at 322)).  McGivern's motion is GRANTED as to Count 5.

---

[14] To the extent Plaintiff's IIED claim is based upon McGivern's alleged failure to timely serve Plaintiff a copy of the final divorce decree, the court has previously dismissed this claim. *See* October 6, 2006 Order (Doc. No. 38).

In sum, the court GRANTS Basco and McGivern's motion for summary judgment.

## C.    HPD's Motion for Summary Judgment

Plaintiff alleges in Count 7 of the Complaint that unnamed HPD officers entered his home without a warrant and removed him, and that HPD failed to teach and enforce constitutional requirements to its police officers, all in violation of § 1983.  Compl. ¶¶ 141-145.  HPD moves for summary judgment on the grounds that the actions complained of are protected by absolute immunity because the officers were acting pursuant to a valid court order.

### 1.    April 2, 2004 TRO

Basco obtained a TRO against Plaintiff on April 2, 2004 pursuant to HRS chapter 586.  *See* HPD's Ex. A.  The TRO ordered that Plaintiff "not visit or remain within 100 yards of any place where [Basco] lives or works. . . . Immediately leave the residence located at 95-2048 Waikalani Pl D402 Mililani, HI 96789 and don't go back until this Order is changed."  *Id.* at 2.  It further ordered:

> If you need personal items from the residence before the court hearing, such as clothing, you may contact the Police Department within 24 hours of the service of this Order.  The Police Department is authorized to escort you to the residence to remove personal items <u>one time</u>, but only after [Basco] is

33

> contacted.  You may be at the residence only while a Police
> Officer is present.

*Id.* The TRO also stated: "An officer of the Police Department shall personally serve the Order and related documents and shall accompany [Basco] and assist [Basco] in securing possession of any dwelling or residence that [Plaintiff] is ordered to vacate." *Id.* at 3.

On April 5, 2004, HPD officers Noel Petersen ("Petersen") and Franklin Martin ("Martin") were given the TRO documents to be served on Plaintiff.  Petersen Decl. ¶ 2; Franklin Decl. ¶ 3.  At 6:50 a.m., HPD dispatch informed the officers that Basco had reported that Plaintiff was home in their residence.  Petersen Decl. ¶ 5.  Petersen and Martin arrived at the 95-2048 Waikalani Pl D402 residence in Mililani around 6:55 a.m.  Peterson Decl. ¶ 5.  As Petersen informed Plaintiff of their presence and that they were there to serve the TRO, Plaintiff became upset and yelled, "you just picking on me because I'm black."  Martin Decl. ¶ 7.  Petersen read Plaintiff the TRO, informed him that Basco had obtained the order from Family Court, and that it authorized the removal of Plaintiff from the house.  Martin Decl. ¶¶ 7-8.  Despite several requests from Petersen, Plaintiff refused to sign the proof of service for the TRO, and

shouted, "hell no; you're kicking me out of my house and you want me to sign

something, hell no!"  Martin Decl. ¶ 9; Petersen Decl. ¶ 11.

Peterson informed Plaintiff that according to the TRO, he could

collect personal items from the home with the assistance of HPD.  Martin Decl.

¶ 11.  The HPD officers observed Plaintiff collect his personal belongings, and at

about 7:50 a.m., Plaintiff left the home in a vehicle.  Petersen Decl. ¶ 14.

## 2.    *HPD Officers Are Entitled to Absolute Immunity*

The HPD officers are entitled to absolute immunity for their actions

arising from the execution of the April 2, 2004 TRO.  Because the officers were

acting pursuant to the TRO when they went to Plaintiff's home, allowed him to

remove his possessions, and escorted him out, they are entitled to absolute

immunity.  *See Coverdell v. Dep't of Social & Health Serv.*, 834 F.2d 758, 765

(9th Cir. 1987) ("The rationale for immunizing persons who execute court orders

is apparent.  Such persons are themselves 'integral parts of the judicial process.'

The fearless and unhesitating execution of court orders is essential if the court's

authority and ability to function are to remain uncompromised." (citation and

quotation signals omitted)); *see also Roland v. Phillips*, 19 F.3d 552, 557 (11th

Cir. 1994) ("Whether a valid judicial order is verbal or written, an executing law

enforcement official is protected by absolute quasi-judicial immunity."); *Kruse v.*

*State of Haw.*, 857 F. Supp. 741, 754 (D. Haw. 1994) (A state employee "who executes the court order is protected by absolute quasi-judicial immunity."); *Cf. Caldwell v. LeFaver*, 928 F.2d 331, 333 (9th Cir. 1991) ("Because the defendants were not acting under the supervision of a court, it is the qualified immunity standard, rather than the absolute immunity standard, which must govern their conduct.").

The April 2, 2004 TRO was issued by the Family Court pursuant to HRS § 586-4(c). *See* HPD's Ex. A. Under HRS § 586-4(a)(3), a person may be enjoined from "[e]ntering or visiting the protected party's residence." Accordingly, the TRO required that Plaintiff "[i]mmediately leave the residence located at 95-2048 Waikalani Pl D402 Mililani, HI 96789 and don't go back until this Order is changed." HPD's Ex. A. at 2. Officers Martin and Peterson were clearly acting in compliance with the terms of the facially valid TRO.

Finally, Plaintiff's claim that if he "had remained in his home, he would have been shot and probably killed, at the very least he would have been taken to jail and labeled with a criminal record for the rest of his life," Compl. ¶ 144, is purely speculative.[15] "In the absence of specific facts, as opposed to

---

[15] Plaintiff's statement that he "was removed from his home without any chance that he would be able to regain his home or property," Compl. ¶ 143, is also not supported by the record.

(continued...)

36

allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion should be granted." *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988); *see also Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) (holding that "conclusory statements of bias do not carry the nonmoving party's burden in opposition to a motion for summary judgment").

### 3.   *No Municipal Liability*

To the extent that Plaintiff seeks to impose municipal liability under § 1983, the claim is without merit.  Although Plaintiff alleges that the HPD "failed to teach and enforce constitutional requirements to [its] police officer[s]," Compl. ¶ 145, there has been no violation of Plaintiff's federal constitutional or statutory rights.  In order to state a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), Plaintiff must show that: (1) he possessed a constitutional right of which he was deprived; (2) the municipality had a policy; (3) this policy amounted to deliberate indifference to Plaintiff's constitutional rights; and (4) the policy was the moving force behind the constitutional violation.  *See Plumeau v. Sch. Dist. # 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

---

[15] (...continued)
According to Plaintiff, the TRO was dismissed by the Family Court, Compl. ¶ 6, after which time he was able to return to the home.

As made clear by the first element of the *Monell* test, the liability of a municipality is contingent upon a violation of constitutional rights; a municipality cannot be held liable based on the actions of one of its employees unless the employee inflicted constitutional harm.  *See Long v. City & County of Honolulu*, --- F.3d ---, 2007 WL 4463917, at *4 (9th Cir. Dec. 21, 2007) ("If no constitutional violation occurred, the municipality cannot be held liable[.]"); *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994).  As discussed above, Plaintiff has not submitted admissible evidence showing an underlying constitutional violation by any HPD employee.  Plaintiff has failed to carry his burden on summary judgment. Accordingly, HPD's motion is GRANTED.

## V. <u>CONCLUSION</u>

For the reasons stated above, the court GRANTS the State Defendants' Motion for Summary Judgment, GRANTS Basco and McGivern's Motion for Summary Judgment, and GRANTS HPD's Motion for Summary Judgment.

As a result of this ruling, there are no remaining claims against Defendants Basco, McGivern, the State of Hawaii, Governor Linda Lingle, Attorney General of the State of Hawaii, Department of Human Services Child

Protective Services, Robert Asato, and HPD.  The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 31, 2007.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Williamson v. Basco et al.*, Civil No. 06-00012 JMS/LEK; Order (1) Granting Defendants Governor Linda Lingle, State of Hawaii, Attorney General for the State of Hawaii, Department of Human Services Child Protective Services, and Robert Asato's Motion for Summary Judgment; (2) Granting Defendants Lynne Jenkins McGivern and Efleda Salome Basco's Motion for Summary Judgment; and (3) Granting Defendant Honolulu Police Department's Motion for Summary Judgment